IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **I N F O R M A T I O N** |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 1:19 CR 44 |
| v. ) | |
| ) | Title 18, United States Code, |
| ANDRE DUPRE, ) | Section 1343 |
| ) | |
| Defendant. ) | JUDGE LIOI |

## GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

1.  Prominent Venture Homes, LLC ("PVH") was a limited liability company registered in Nevada on December 13, 2013. Defendant ANDRE DUPRE, Officer 1, Officer 2, and Officer 3 were listed as officers of PVH.

2.  On or about February 26, 2014, PVH established two Wells Fargo bank accounts in Mississippi, ending in 3266 and 9052 ("Wells Fargo accounts"), both of which listed Defendant, Officer 1, Officer 2, and Officer 3 as signatories on the accounts.

3.  Defendant was the sole manager of PVH and had control of PVH's Wells Fargo accounts.

## COUNT 1
(Wire Fraud, 18 U.S.C. § 1343)

The United States Attorney charges:

4.  The allegations contained in paragraphs 1 through 3 are realleged and incorporated by reference as if fully set forth herein.

## The Scheme to Defraud

5. Beginning at least as early as November 2013, and continuing through in or around October 2016, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ANDRE DUPRE devised and intended to devise a scheme to defraud investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

6. It was part of the scheme that:

   a. Defendant falsely represented that PVH was a real estate company specializing in purchasing, rehabilitating, and re-selling single-family homes, in order to solicit investors to enter into joint venture ("JV") agreements to provide "gap" funding for the purchase, renovation, and resale of residential real estate in Mississippi and Louisiana.

   b. Defendant induced individuals to invest in PVC by making materially false and fraudulent misrepresentations about PVH's financial condition, the collateral, and the nature and disposition of the investors' money.

   c. Defendant created and used Facebook accounts with the usernames "Andre Dupre" and "Alejandra Smith" to solicit investments and to communicate with PVH investors.

   d. Defendant entered into numerous JV agreements with various investors. In the JV agreements, Defendant, on behalf of PVH, promised to purchase, rehabilitate, and resell the properties. Defendant also promised investors a 50% return on investment within six months of the purchase date. Instead, Defendant used the investors' money for his personal expenses.

e. Defendant sent the investors the JV agreements via email, using his email account adupre@prominentventurehomes.com. The investors used various email accounts to send Defendant signed JV agreements, including emails sent to and from the Northern District of Ohio, Eastern Division.

f. Defendant never actually purchased real estate with the investor funds, as he had promised investors in the JV agreements. Instead, after receiving the investors' money, Defendant discontinued contact with investors, shut down his Facebook account, and failed to pay the investors their promised 50% ROI.

### The Victim - Investors

7. <u>Investor 1</u>

a. On or about August 23, 2014, Defendant and Investor 1 entered into a JV. The JV set forth terms for the "joint venture acquisition . . . of multifamily commercial property(ies) located in 15140 Fisher Boulevard, Gulfport, MS 39530 (Colony House)." As part of the agreement, Defendant promised to acquire and hold title to the Colony House property on behalf of the joint venture.

b. Based on Defendant's representations and promises, Investor 1 wired Defendant approximately $90,000 from Investor 1's bank account at Bank of America in California to the Wells Fargo accounts, located in Mississippi. Under the JV, profits and losses were to be allocated 80% to the developer and 20% to Investor 1.

c. On or about August 18, 2014, Defendant created a false and fictitious "proof of funds letter" and a false and fictitious bank statement, purportedly issued by Wells Fargo Bank, claiming that Defendant had $740,000 in the PVH account when, in fact, and as Defendant then knew, he actually only had $150 in the account at that time.

   d. On or about August 18, 2014, Defendant emailed these false and fictitious documents to Investor 1.

   e. From on or about August 26, 2014, to on or about August 8, 2016, Defendant wired Investor 1 approximately $31,495, which Defendant represented to Investor 1 was rent proceeds from the Colony House property. In truth and in fact, and as Defendant then well knew, Defendant never actually purchased the Colony House.

   f. On or about September 21, 2015, Defendant and Investor 1 entered into a second JV agreement, for the "joint venture acquisition of . . . selected single family residential property(ies) located in 1849 Fig Drive, Metairie, LA 70001" (the "Fig Drive Property"). Pursuant to the agreement and wiring instructions provided by Defendant via email, Investor 1 wired Defendant approximately $29,900 from Investor 1's bank account in California to an account controlled by Defendant in Mississippi.

   g. Defendant falsely represented to Investor 1 that Investor 1's funds "will earn an annualized return on equity funds . . . within or before a 6 month term (50% ROI) of property purchase (target close date 11/09/15), but not later than May 9th 2016, to the sum of $44,850." In fact, Defendant never used the money sent by Investor 1 to purchase the Fig Drive Property and Defendant never paid Investor 1 any return on Investor 1's second investment.

   h. On or about November 7, 2015, Defendant and Investor 1 entered into a third JV agreement. Based on Defendant's promises and representations, Investor 1 wired Defendant approximately $32,000 to be used as "equity funds (GAP) . . . for acquisition and/or rehab" of the Fig Drive Property.

      i.      Defendant falsely represented to Investor 1 that Investor 1 would have a 50% ROI within or before a 6-month term; however, Defendant never actually purchased the Fig Drive Property or paid Investor 1 any return on Investor 1's third investment.

8.      <u>Investor 2</u>

      a.      On or about November 7, 2015, Investor 2 and Defendant entered into a JV agreement for the "joint venture acquisition … of selected single family residential property(ies) located in 1849 Fig Drive, Metairie, LA 7001" (the "Fig Drive Property"). Pursuant to this agreement, Investor 2 wired Defendant approximately $15,700 from Investor 2's bank account, located in Texas, to the Wells Fargo accounts in Mississippi.

      b.      Contrary to Defendant's representations to Investor 2, Defendant never purchased the Fig Drive Property and did not pay Investor 2 the promised return on investment.

9.      <u>Investors 3 and 4</u>

      a.      On or about January 19, 2016, Investor 3 entered into a JV agreement with Defendant for the "joint venture acquisition of 2240 Loumor, Metairie, LA 70001" (the "Loumor Property"). Pursuant to the terms of the agreement, Investor 3 wired Defendant approximately $32,000 from Investor 3's bank account at PNC in the Northern District of Ohio, Eastern Division, to the Wells Fargo accounts in Mississippi.

      b.      Defendant falsely represented to Investor 3 that Investor 3's funds "will earn an annualized return on equity funds . . . within or before a 6 month term (50% ROI) . . . but not later than September 11, 2016, to the sum of $48,000." Contrary to Defendant's promises and representations to Investor 3, Defendant never actually purchased the Loumor Property and did not pay Investor 3 any of the promised 50% return on investment.

      c.      On or about January 19, 2016, Investor 4 also entered into JV agreement with Defendant for the "joint venture acquisition of 2240 Loumor, Metairie, LA 70001" (the "Loumor Property"). Pursuant to the agreement, Investor 4 wired Defendant approximately $32,000 from Investor 4's bank account at Bank of America in Minnesota to the Wells Fargo accounts in Mississippi.

      d.      Defendant falsely represented to Investor 4 that Investor 4's funds "will earn an annualized return on equity funds . . . within or before a 6 month term (50% ROI) . . . but not later than September 11, 2016, to the sum of $48,000." Contrary to Defendant's promises and representations to Investor 4, Defendant never actually purchased the Loumor Property and never paid Investor 4 any of the promised 50% return on investment.

10.     <u>Investor 5</u>

      a.      On or about April 15, 2016, Investor 5 entered into a JV agreement with Defendant for the "joint venture acquisition of . . . selected single family residential property(ies) located in 134 Hector St, Metairie, LA 70001" (the "Hector St. Property"). Pursuant to the terms of the agreement, Investor 5 wired Defendant approximately $29,500 from Investor 5's account at Union Bank in California to the Wells Fargo accounts in Mississippi.

      b.      Defendant promised Investor 5 that Investor 5's funds "will earn an annualized return on equity funds . . . within or before a 6 month term (50% ROI) . . . but not later than January 10, 2017, to the sum of $44,250." Contrary to Defendant's promises and representations to Investor 5, Defendant never purchased the Hector St. Property and never paid Investor 5 any of the promised 50% return on investment.

      c.      On or about July 11, 2016, Investor 5 entered into a second JV agreement with Defendant for the "joint venture acquisition of . . . selected single family residential

property(ies) located in 229 W. Livingston St., Metairie, LA 70005" (the "W. Livingston Property"). Pursuant to the terms of the agreement, Investor 5 wired Defendant approximately $25,000 from Investor 5's account at Union Bank in California to the Wells Fargo accounts in Mississippi.

    d. Defendant promised Investor 5 that Investor 5's funds "will earn an annualized return on equity funds . . . within or before a 6 month term (50% ROI) . . . but not later than January 22, 2017, to the sum of $75,000." Contrary to the Defendant's promises and representations to Investor 5, Defendant never purchased the W. Livingston Property and never paid Investor 5 any of the promised 50% return on investment.

11. As a result of Defendant's false statements and misrepresentations, investors wired Defendant approximately $311,100, all of which went into the Wells Fargo accounts in Mississippi.

### The Statutory Violation

12. On or about January 21, 2016, in the Northern District of Ohio and elsewhere, Defendant ANDRE DUPRE, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce, any writing, sign, signal, picture, and sound, to wit: a wire transfer in the amount of approximately $32,000, from Investor 3's PNC bank account located in Ohio, to a Wells Fargo bank account controlled by Defendant, located in Mississippi.

In violation of Title 18, United States Code, Section 1343.

              JUSTIN E. HERDMAN
              United States Attorney

By: _/s/ Michael L. Collyer_
   MICHAEL L. COLLYER
   Chief, White Collar Crimes Unit